IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| Augusta Sportswear, Inc., a Delaware corporation; High 5 Sportswear, Inc., a Washington corporation; and Holloway Sportswear, Inc., a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NUMBER: |
| v. | ) ) | JURY DEMAND |
| adidas America, Inc., a Delaware corporation; and adidas AG, a German corporation, | ) ) ) | |
| Defendants. | ) ) | |

## Complaint for Declaration of Non-Infringement and Non-Dilution of Trademark

1.      This is a declaratory judgment action arising under the Trademark Act of 1946, 15 U.S. C. § 1051 *et seq.* and the Declaratory Judgment Act, 28 U.S.C. § 2201(a). This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1338(a).

2.      This Court has personal jurisdiction over defendants because defendants conduct business throughout the United States, including in Georgia, either directly or through the actions of adidas America, Inc., as the licensee of adidas AG, whose use of adidas' marks inures to the benefit of adidas AG.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to Plaintiffs' claims occurred within this judicial district.

1

3.     Plaintiff Augusta Sportswear, Inc. ("Augusta Sportswear") is a corporation organized under the laws of the State of Delaware, with its principal place of business in Grovetown, Georgia, in this judicial district.

4.     Plaintiff High 5 Sportswear, Inc. ("High 5") is a corporation organized under the laws of the State of Washington with its principal place of business in Seattle, Washington.

5.     Plaintiff Holloway Sportswear, Inc. ("Holloway") is a corporation organized under the laws of the State of Delaware with its principal place of business in Sidney, Ohio.

6.     Plaintiffs Augusta Sportswear, High 5, and Holloway are sister companies. Hereafter all Plaintiffs will be referred to collectively as Augusta.

7.     Defendant adidas AG is a German entity that markets athletic apparel and other gear worldwide.  Augusta is informed and believes that adidas AG is a joint stock company organized under the laws of Germany with its principal place of business in Herzogenaurach, Germany.

8.     adidas America, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in Portland, Oregon.  Upon information and belief, adidas America, Inc. is wholly owned by defendant adidas AG, and markets and distributes adidas branded products in the United States on behalf of adidas AG.

FACTUAL BACKGROUND

9.     Augusta manufactures and markets apparel for team sports, including uniforms and other apparel for baseball, softball, basketball, soccer, track and field, and football, fan gear, as well as apparel such as sports shirts, athletic tops and bottoms, athletic fleece, outerwear and warm-ups.

2

10.    Augusta's customers include team uniform suppliers, decorators, distributors and sporting goods retailers, college bookstores and other retailers.

11.    Augusta Sportswear has been manufacturing and selling athletic and team apparel for over 30 years.

12.    High 5 has distributed athletic apparel since 1989.

13.    Holloway has distributed athletic apparel since 1946.

14.    Like many other apparel manufacturers and distributors, Augusta has sold apparel that includes stripes as design elements. The design elements have never been used as source identifiers.

15.    Since at least 1987, Augusta Sportswear has sold jersey shirts bearing three stripes on the sleeves. Exhibit A to this Complaint contains excerpts from Augusta Sportswear's 1987 catalog, which depicted, on the same page, a shirt with three horizontal stripes around the sleeve and a shirt with three stripes on the shoulder and vertically down the sleeve.

16.    In the early 1990's, Augusta Sportswear undertook to manufacture private label products for adidas.

17.    During the course of the relationship between adidas and Augusta Sportswear, adidas representatives visited Augusta Sportswear's facilities in Grovetown, Georgia and saw Augusta Sportswear catalogs which depicted, among other products, shirts bearing stripes.  At their visits to Augusta Sportswear, adidas representatives also saw apparel bearing stripes.  In about 1996, after seeing Augusta Sportswear catalogs and clothing, adidas objected to Augusta Sportswear's sale of one jersey style that bore three stripes on the shoulders and down the sleeve (referred to hereafter as its "three stripe shoulder jersey").   Adidas claimed that Augusta Sportswear's three stripe shoulder jersey infringed adidas' trademark rights.

3

18.     When adidas objected to Augusta Sportswear's three stripe shoulder jersey, it did not object to Augusta Sportswear's sale of jerseys with three stripes horizontally on the sleeves.

19.     Augusta Sportswear responded to adidas' objection but the discussions between Augusta Sportswear and adidas did not result in a definitive settlement.  Augusta Sportswear did not receive or have further communications from adidas about adidas' objection to Augusta's striped apparel since 1996 or 1997 at the latest.

20.     Augusta Sportswear discontinued the sale of its three stripe shoulder jersey in approximately 1998.   Augusta Sportswear continued to sell other apparel bearing stripes, including two and three stripe designs to which adidas had not objected.

21.     Prior to the time adidas had objected to Augusta Sportswear's three stripe shoulder jersey, adidas had secured trademark registrations in the United States Trademark Office for designs consisting of three vertical stripes, positioned in particular ways on apparel and footwear.   Adidas AG is currently the record owner of various federal trademark registrations of different three stripe designs with respect to use on different types of clothing and footwear.

22.     In early 2009, Augusta Sportswear received a letter from adidas' counsel, Kilpatrick Stockton in Atlanta, Georgia, which stated that "adidas requested that we contact you regarding certain infringing apparel being sold by Augusta Sportswear." A copy of the letter is attached to this Complaint as Exhibit B.  The letter, dated January 6, 2009, claimed that Augusta Sportswear was selling apparel that "features three parallel stripes in a manner likely to be confused with adidas's famous Three-Stripe Mark."   The letter specifically referred to registrations for what adidas referred to as "the Three-Stripe Mark" for athletic training suits (Reg. No. 870,136), jackets (Reg. Nos. 2,016,963, 3,029,127, 3,063,742, 9,063745, and

4

9,087,329), pants (Reg. 2,284,308 and 2,278,591), shirts (Reg. 2,058,619 and 3,029,127) and hats (Reg. 3,183,656 and 3,236,505).

23.     adidas' January 6, 2009 letter identified a shirt, or jersey, made by Augusta Sportswear which adidas claimed to be infringing. The allegedly infringing jersey is a short sleeve shirt with three stripes around the sleeve (referred to hereafter as Augusta's "three ring sleeve jersey").

24.     Augusta Sportswear responded to adidas's January 6, 2009 letter by letter of its counsel, Floyd Hoffman, in which Mr. Hoffman advised that Augusta Sportswear has been selling the three ring sleeve jersey since as early as 1987.  The letter further advised that, while Augusta Sportswear had voluntarily discontinued sales of the three stripe shoulder jersey, it had continued offering jerseys of the type identified in the January 6, 2009 letter.

25.     In fact, Augusta has, over the years, offered different types of apparel bearing either two or three stripes, in different positions on the apparel.

26.     Since at least 1987, catalogs of Augusta Sportswear have depicted shirts   bearing three rings, or stripes, around the sleeves in a horizontal position.

27.     Since at least 1990, catalogs of Augusta Sportswear have depicted shirts bearing two rings, or stripes, around the ends of the sleeves.

28.     Since at least 1998, catalogs of Augusta Sportswear have depicted shirts identical to the three stripe shoulder jersey except with two stripes in place of the three stripes.

29.     After receiving adidas' January 2009 demand letter, Augusta Sportswear advised adidas that its affiliated companies were offering striped apparel.    Accordingly, all Plaintiffs entered into settlement negotiations with adidas through their counsel.

30.     Augusta has attempted to resolve the dispute with adidas amicably. However, adidas has demanded that Augusta cease offering clothing with three stripes as well as clothing bearing two or four stripes.

31.     Subsequent to sending the January 2009 demand letter, adidas advised Augusta that it considers certain clothing bearing two or four stripes as infringing or diluting adidas's Three-Stripe Mark.  adidas has demanded that Augusta not sell clothing bearing various designs of two, three and four stripes.  If Augusta were to accede to adidas' demands, Augusta would be deprived of the ability to compete with other apparel companies that, like Augusta, offer clothing with stripes as decorative elements or as generic or descriptive indications of the garment's use for athletic purposes.  Therefore, an actual case or controversy has arisen and exists between Augusta and adidas with respect to whether Augusta has infringed or diluted and is infringing or diluting adidas' Three-Stripe Mark.

32.     adidas has brought suit against third parties, including suit in Georgia in this judicial district, alleging that apparel bearing stripes, such as those employed on Augusta's apparel, infringes and dilutes adidas's Three-Stripe Mark.  However, upon information and belief, no U.S. court has rendered a decision on the merits in favor of adidas that apparel bearing two stripes (or any other amount of stripes more or less than three) infringes or dilutes adidas' Three-Stripe Mark under federal laws or the law of any state.

33.     adidas nonetheless has asserted in a number of its actions that, in essence, it has the right to prevent others from using multiple stripes on athletic apparel.  For example, in adidas America, Inc., et al. v. Polo Ralph Lauren Corporation, Case No. CV 04-1124, filed in the United States District Court in Oregon, adidas claimed that the defendant offered for sale a jacket bearing two stripes running the entire length of the sleeve of the jacket, and that the defendant

6

therefore had infringed and diluted adidas' Three-Stripe Mark.  The action was dismissed by adidas less than three months after filing.

34.     adidas has entered into settlement agreements that prohibit others from selling apparel and footwear bearing adidas' Three-Stripe Mark or designs deemed to be confusingly similar to adidas' Three Stripe Mark. adidas has subsequently filed suit against the settling parties, claiming that their products bearing two stripes, rather than three stripes, were confusingly similar to adidas' Three-Stripe Mark.  adidas has also entered into settlement agreements prohibiting other companies from offering clothing or shoes with designs that consist of two or four stripes, in positions similar to the positions of adidas' Three-Stripe Mark.

35.     Notwithstanding adidas' claims, numerous persons and entities have employed stripes decoratively and ornamentally on apparel for decades, if not centuries.  Stripes are also employed descriptively on athletic apparel to indicate that the goods are intended or suitable for use in athletics and sports activities.

36.     Notwithstanding the decision of some footwear and apparel companies to consent to adidas' broad settlement terms in lieu of defending the claims in litigation, numerous apparel companies have continued to offer apparel similar to Augusta's apparel which adidas has claimed to be infringing.

37.     adidas' Three-Stripe Mark lacks inherent distinctiveness, as it is comprised merely of the commonplace design element of stripes, which have historically adorned the apparel of many manufacturers.  Although adidas' use and registration of specific three-stripe patterns applied to certain specific locations on apparel may entitle it to some degree of trademark protection, the scope of protection is narrow and does not extend to deprive others of

the right to continue the decades-old practice of using stripes ornamentally and/or descriptively on apparel.

38.    adidas has itself blurred the line between its proprietary use of stripes to indicate origin, and the commonplace decorative and/or descriptive use of stripes to embellish product or indicate athletic apparel, to which all competitors are entitled.

## FIRST CLAIM FOR RELIEF
### (Declaration of Non-Infringement)

39.    Augusta has not infringed and is not infringing, directly, indirectly, contributarily or by inducement or otherwise, adidas' Three-Stripe Mark.  Among other things, Augusta's use of stripes or other decorative striping, on its apparel, is not likely to cause confusion in the marketplace.

40.    Even if there were a likelihood of confusion between Augusta's use of stripes on athletic apparel and the adidas Three-Stripe Mark, Augusta would not be liable for trademark infringement because Augusta's use of such striping on athletic apparel is a fair use. Such stripes merely serve to indicate descriptively the garment's purpose for use in athletics.

41.    Even if there were a likelihood of confusion between Augusta's use of stripes on apparel and the adidas Three-Stripe Mark, adidas is barred from enforcing its rights against Augusta due to its undue delay in objecting to Augusta's use of stripes on apparel.  Augusta has been prejudiced by this delay and any relief against Augusta for damages, injunctive relief or otherwise, would be inequitable.

42.    adidas's continued attempts to broaden its trademark rights beyond its specifically registered marks, among other things, entitle Augusta to recover its attorneys' fees under 15 U.S.C. § 1117(a).

## SECOND CLAIM FOR RELIEF
### (Declaration of Non-Dilution)

43.     Augusta incorporates herein by reference each and every allegation contained in paragraphs 1 through 42 above, as though set forth at length.

44.     adidas's demand that Augusta cease marketing and not hereafter market athletic clothing bearing certain stripe designs, including two, three and four stripes, is based, in part, on adidas' claim that such apparel dilutes, or is likely to dilute, adidas' Three-Stripe Mark.

45.     Augusta has not diluted and is not diluting, directly or indirectly, contributorily, by inducement or otherwise, the Three-Stripe Mark.

46.     Even if Augusta's two stripes or other decorative striping on athletic apparel had caused actual dilution of the Three-Stripe Mark, Augusta would not be liable for trademark dilution because the doctrines of laches, waiver, acquiescence and estoppel preclude any such liability.  Augusta and others have long marketed and sold athletic apparel bearing ornamental stripes.  adidas has known or should have known of Augusta's striped apparel for many years. Indeed, adidas' current position regarding the scope of protection of its Three-Stripe Mark contrasts with the position adidas has taken in past years when adidas accepted as non-infringing stripe designs that differed from its Three-Stripe Mark simply by the addition or deletion of a stripe.

47.     Accordingly, Augusta requests a judicial determination of the rights and duties of the parties under the trademark laws of the United States (including but not limited to 15 U.S.C. § 1125(c)) and the laws of the State of Georgia (including but not limited to the Georgia Anti-Dilution Act), and the common law with respect to the use of stripes on athletic apparel, and a

declaratory judgment that Augusta's use of stripes does not constitute dilution or infringement and does not entitle adidas to any relief.

48.     adidas's continued attempts to broaden its trademark rights beyond its specifically registered marks, among other things, entitle Augusta to recover its attorneys' fees under 15 U.S.C. § 1117(a).

WHEREFORE, Augusta demands judgment:

1.     That the Court issue a declaration that Augusta's use of two stripes or other decorative or descriptive striping on athletic apparel does not infringe, directly or contributorily, any valid and protectable mark held by adidas under the laws of the United States, the laws of the State of Georgia, or the common law;

2.     That the Court issue a declaration that Augusta's use of decorative or descriptive stripes on athletic apparel does not dilute, directly or contributorily, any valid and protectable design mark held by adidas under the laws of the United States or under relevant state law;

3.     In the alternative, or in addition, that the Court declare that adidas is barred by laches, the statute of limitations, waiver, acquiescence and/or estoppel from asserting any claims against Augusta based on apparel designs that Augusta has offered for years;

4.     That the Court award Augusta its reasonable attorneys' fees pursuant to 15 U.S.C. §1117(a);

5.     That Augusta be awarded its costs of suit; and

6.     That Augusta have such other and further relief as the Court deems just and proper.

This 14th day of December, 2009.

David E. Hudson
Georgia Bar No. 374450

Hull Barrett, P.C.
801 Broad St.
Suite 700
Augusta GA 30903-1564
(706) 828-2019
DEHudson@hullfirm.com

OF COUNSEL

Linda A. Friedman (lfriedman@babc.com)
Paul Sykes (psykes@babc.com)
Nathan W. Johnson (njohnson@babc.com)
BRADLEY ARANT BOULT CUMMINGS
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone:      (205) 521-8274 (L.Friedman)
Facsimile:      (205) 488-6274 (L.Friedman)

                                   /s/    David E. Hudson

                              Attorneys for Plaintiffs,
                              Augusta Sportswear, Inc.
                              High 5 Sportswear, Inc.
                              Holloway Sportswear, Inc.

11